```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA        :       SEALED INDICTMENT

          - v. -                :
                                        S1 19 Cr.  714
TOMER FEINGOLD and              :
DOV MALNIK,
                                :
          Defendants.
                                :

- - - - - - - - - - - - - - - X
```

### COUNT ONE
**(Conspiracy to Commit Securities Fraud and
Fraud in Connection with a Tender Offer)**

The Grand Jury charges:

### Relevant Individuals and Entities

1.   At all times relevant to this Indictment, TOMER FEINGOLD, the defendant, was a securities trader residing in Israel and Hong Kong.

2.   At all times relevant to this Indictment, DOV MALNIK, the defendant, was a securities trader residing in Switzerland. At all times relevant to this Indictment, TOMER FEINGOLD, the defendant, and MALNIK were business partners and, among other things, jointly operated a firm that focused on researching publicly-traded companies for investment purposes.

3.   At all times relevant to this Indictment, Investment Bank A was a global investment banking advisory firm with offices in, among other locations, London, England, and

Manhattan, New York.

4.    At all times relevant to this Indictment, Investment Bank B was a global investment banking advisory firm with offices in, among other locations, London, England, and Manhattan, New York.

5.    At certain times relevant to this Indictment, two co-conspirators not named as defendants herein ("CC-1" and "CC-2") were involved in a romantic relationship and resided together in London.  At certain times relevant to this Indictment, CC-2 was employed in the investment banking division of Investment Bank A.

6.    At certain times relevant to this Indictment, an individual not named as a defendant herein (the "Investment Bank B Insider") was employed in the investment banking division of Investment Bank B.

7.    At certain times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-3") was a friend of CC-1 and CC-2, residing in Europe.

8.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-4") was a securities trader residing in Switzerland.

9.    At all times relevant to this Indictment:

a.    Ariad was a biotechnology company with headquarters in Boston, Massachusetts.  Ariad's securities

traded under the symbol "ARIA" on the NASDAQ Stock Exchange ("NASDAQ").

b.    InterMune, Inc. ("Intermune") was a biotechnology company with headquarters in Brisbane, California.  Intermune's securities traded under the symbol "ITMN" on the NASDAQ.  During this time period, Intermune was a client of Investment Bank A.

c.    Avanir Pharmaceuticals, Inc. ("Avanir") was a pharmaceutical company with headquarters in Aliso Viejo, California.  Avanir's securities traded under the symbol "AVNS" on the NASDAQ.  During this time period, Avanir was a client of Investment Bank A.

d.    Otsuka Pharmaceutical Co., Ltd. ("Otsuka") was a healthcare company with headquarters in Tokyo, Japan.  During this time period, Otsuka offered to acquire, and acquired, Avanir.

e.    Hyperion Therapeutics, Inc. ("Hyperion") was a biopharmaceutical company headquartered in San Francisco, California.  Hyperion's securities traded under the symbol "HPTX" on the NASDAQ.  During this time period, Hyperion was a client of Investment Bank A.

f.    Horizon Pharma plc ("Horizon") was a pharmaceutical company with headquarters in Dublin, Ireland. Horizon's securities traded under the symbol "HZNP" on the NASDAQ.  During this time period, Horizon offered to acquire,

3

and acquired, Hyperion.

g.    Pharmacyclics Inc. ("Pharmacyclics") was a biopharmaceutical company with headquarters in Sunnyvale, California.  Pharmacyclics' securities traded under the symbol "PCYC" on the NASDAQ.  During this time period, Pharmacyclics was a client of Investment Bank A.

h.    Receptos Inc. ("Receptos") was a biotechnology company with headquarters in San Diego, California.  Receptos' securities traded under the symbol "RCPT" on the NASDAQ.  During this time period, Receptos was a client of Investment Bank A.

i.    Celgene Corporation ("Celgene") was a biopharmaceutical company with headquarters in Summit, New Jersey.  Celgene's securities traded under the symbol "CELG" on the NASDAQ.  During this time period, Celgene offered to acquire, and acquired, Receptos.

j.    Omnicare, Inc. ("Omnicare") was a health care company with headquarters in Cincinnati, Ohio.  Omnicare's securities traded under the symbol "OCR" on the New York Stock Exchange.  During this time period, Omnicare was a client of Investment Bank A.

## Overview of the Insider Trading Scheme

10.   From at least in or 2013 through in or about 2017, TOMER FEINGOLD and DOV MALNIK, the defendants, participated in a large-scale, international insider trading ring.  Through the

scheme, FEINGOLD and MALNIK received material, non-public information ("MNPI") concerning acquisitions and potential acquisitions of publicly traded companies from CC-4. As FEINGOLD and MALNIK well knew, this MNPI was obtained by CC-4 directly and indirectly from individuals who were insiders at publicly-traded companies and investment banks who advised publicly-traded companies and who were duty-bound to keep the information at issue confidential. Notwithstanding that duty, these insiders breached their duty and shared MNPI with others, including CC-4, who, in turn, shared that information with FEINGOLD and MALNIK. As FEINGOLD and MALNIK well knew, the insiders who passed MNPI to CC-4 did so in breach of their fiduciary and other duties, in exchange for compensation, typically funded from the profits of the insider trading scheme, and with the expectation that tippees would place timely, profitable securities trades based on that MNPI. FEINGOLD and MALNIK used the MNPI that they received in this fashion to place timely, profitable securities trades resulting in millions of dollars of profits.

### Means and Methods of the Conspiracy

11. TOMER FEINGOLD and DOV MALNIK, the defendants, began obtaining MNPI from CC-4 in or about 2013. Specifically, in or about the summer of 2013, CC-4 met FEINGOLD and MALNIK and explained to them that CC-4 had numerous sources of MNPI and

that CC-4 could share that MNPI with FEINGOLD and MALNIK. In return, FEINGOLD and MALNIK agreed to compensate CC-4 by buying additional securities on CC-4's behalf and transmitting the profits from those trades to CC-4. This trading by FEINGOLD, MALNIK, and CC-4 included the purchase and sale of U.S.-exchange traded securities as well as overseas securities of the relevant target companies that traded on foreign exchanges.

12. Soon after meeting TOMER FEINGOLD and DOV MALNIK, the defendants, CC-4 explained to them the importance of CC-4 being paid CC-4's share of the profits in cash because CC-4 needed cash to pay his sources of MNPI. FEINGOLD and MALNIK agreed to this arrangement and obtained MNPI about numerous companies from CC-4. Specifically, CC-4 obtained MNPI which was subsequently shared with FEINGOLD and MALNIK from at least three sources.

*MNPI Obtained from the Relative of a Board Member at Ariad*

13. In or about 2013, CC-4 shared MNPI with TOMER FEINGOLD and DOV MALNIK, the defendants, concerning Ariad. CC-4 obtained this information through an associate of CC-4's (the "Associate") who had a close personal friendship with a member of the board of directors of Ariad (the "Director") and the Director's close relative (the "Relative"). By virtue of their close relationship, the Relative obtained information about Ariad from the Director and shared that information with the Associate in exchange for cash and other benefits. The Associate

then shared that information with CC-4 with the understanding
that CC-4 would place timely, profitable securities trades based
on that information.  Specifically, CC-4 received MNPI in this
fashion about, among other things, upcoming negative and
positive drug-related announcements concerning Ariad as well as
information about possible corporate transactions.  CC-4 placed
timely, profitable securities trades based on that MNPI and
shared that MNPI with FEINGOLD and MALNIK in order for them to
trade based on that MNPI.

14.  For example, in or around the fall of 2013, TOMER
FEINGOLD and DOV MALNIK, the defendants, obtained MNPI from CC-4
about an upcoming positive drug-related announcement concerning
Ariad.  CC-4 in turn had obtained that information through the
Associate from the Relative.  Based on that MNPI, FEINGOLD and
MALNIK purchased over two hundred thousand shares of Ariad, and
sold many of the shares shortly thereafter for a substantial
profit.

*MNPI Stolen from Investment Bank A*

15.  From at least in or about 2014 through at least in or
about 2015, CC-4 shared MNPI with TOMER FEINGOLD and DOV MALNIK,
the defendants, that was stolen from Investment Bank A.
Specifically, while employed at Investment Bank A, CC-2 stole
MNPI from Investment Bank A by accessing computer systems at
Investment Bank A containing MNPI.  CC-1 and CC-2 then agreed to

share that MNPI with CC-3, a close friend of theirs, with the understanding that CC-3 would pass the MNPI to securities traders.  CC-1 often passed the MNPI to CC-3 in person, and sometimes provided CC-3 with confidential documents that CC-2 had stolen from Investment Bank A.  In return for providing this MNPI, CC-3 provided CC-1 and CC-2 with over $1 million of benefits, including cash, hotel rooms and dinners, luxury watches, and expensive clothes.

16.  After CC-3 obtained the MNPI from CC-1 and CC-2, CC-3 passed the MNPI to CC-4 in exchange for cash.  Both the provision of MNPI as well as the cash compensation were typically exchanged in person.  After obtaining the MNPI from CC-3, CC-4 placed timely, profitable trades based on the MNPI and shared that MPNI with TOMER FEINGOLD and DOV MALNIK, the defendants, in order for them to place additional trades.  Based on the MNPI from Investment Bank A, FEINGOLD and MALNIK placed timely, profitable trades in various securities, thereby earning millions of dollars in profits.  As per their arrangement, those profits were shared with CC-4, who, as FEINGOLD and MALNIK well knew, used those profits, in part, to compensate the sources of the inside information.

*MNPI Stolen from Investment Bank B*

17.  From at least in or about 2015 through at least in or about 2017, CC-4 shared MNPI with TOMER FEINGOLD and DOV MALNIK,

the defendants, that was stolen from Investment Bank B. This MNPI was obtained by CC-4 from the Investment Bank B Insider, who had access to this MNPI by virtue of the Investment Bank B Insider's employment at Investment Bank B, and who agreed to share the MNPI with CC-4 in exchange for cash. After obtaining MNPI from the Investment Bank B Insider, CC-4 placed timely, profitable securities trades based on that MNPI, and shared that MNPI with FEINGOLD and MALNIK, under the same arrangement described above; namely, CC-4 shared MNPI with FEINGOLD and MALNIK and, in exchange, FEINGOLD and MALNIK shared trading profits with CC-4 which profits, as FEINGOLD and MALNIK well knew, were used in part to compensate the Investment Bank B Insider, the provider of the MNPI.

18. Throughout the conspiracy, TOMER FEINGOLD and DOV MALNIK, the defendants, as well as CC-1, CC-2, CC-3, CC-4, and the Investment Bank B Insider, took numerous steps to conceal their unlawful enterprise, including through the use of encrypted messaging applications and multiple unregistered "burner" cellphones to communicate with each other.

19. TOMER FEINGOLD and DOV MALNIK, the defendants, also attempted to avoid detection by engaging in securities trading based on MNPI through numerous offshore corporate entities. For example, in or about 2011, FEINGOLD incorporated a British Virgin Islands entity based in Hong Kong ("Shell Company-1").

Shell Company-1 subsequently opened trading and/or bank accounts. Similarly, in or about 2011, MALNIK incorporated a British Virgin Islands entity based in Geneva, Switzerland ("Shell Company-2"). Shell Company-2 subsequently opened trading and/or bank accounts. During the insider trading scheme, FEINGOLD and MALNIK's offshore companies traded in the stocks of companies about which FEINGOLD and MALNIK had received MNPI – often with multiple of these companies trading in the same stock and on the same days.

**The Use of Shell Companies to Pay for the MNPI**

20. In addition to using offshore corporate entities to open bank accounts and engage in securities trading, TOMER FEINGOLD and DOV MALNIK, the defendants, used these various entities to transfer a portion of the profits of their illegal insider trading to CC-4 as per FEINGOLD and MALNIK's agreement with CC-4 described above.

21. At first, TOMER FEINGOLD and DOV MALNIK, the defendants, instructed their banks to send the funds to an account at a financial institution in Switzerland which agreed to hold the funds for the benefit of CC-4 (the "CC-4 Account"). After a short time, however, FEINGOLD and MALNIK's banks questioned the purpose of the transactions and requested justification for the transfer of funds. Accordingly, in order to deceive the banks, FEINGOLD, MALNIK, and CC-4 agreed that CC-

10

4 would issue fake invoices for consulting services to FEINGOLD and MALNIK's various offshore entities. The offshore entities would then send the funds to the CC-4 Account pursuant to the fake invoices.

22. For example, on or about February 5, 2014, CC-4 caused the CC-4 Account to issue a fake invoice to Shell Company-2 for $1,350,000 for "Consulting services as per Consulting Agreement dated 1st September 2013." On or about February 6, 2014, Shell Company-2 wired $700,000 to the CC-4 Account pursuant to the invoice. In truth and in fact, and as TOMER FEINGOLD and DOV MALNIK, the defendants, well knew, no consulting services had been provided. The transfer, which was denominated in U.S. dollars, cleared through a correspondent bank account maintained by a financial institution in Manhattan, New York. CC-4 continued to obtain payments and profits from insider trading from FEINGOLD and MALNIK in exchange for providing them with MNPI until at least in or about 2017.

**Statutory Allegations**

23. From at least in or about 2013 through in or about 2017, in the Southern District of New York and elsewhere, TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (a) securities

fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, and (b) fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

24. It was a part and object of the conspiracy that TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections

78j(b) and 78ff.

25.   It was a further part and an object of the conspiracy that TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, FEINGOLD and MALNIK, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought, and to be sought, by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible into and exchangeable for such securities and options and right to obtain and to dispose of such securities and options, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, in

13

violation of Title 15, United States Code, Sections 78n(e) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

Overt Acts

26.  In furtherance of the conspiracy, and to effect the illegal objects thereof, TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   In or about 2013, MALNIK bought an expensive watch for CC-4 in exchange for CC-4 having provided MALNIK with MNPI, which watch was delivered to an associate of CC-4 in Manhattan, New York.

b.   On or about February 19, 2015, CC-2, while employed as an associate at Investment Bank A, accessed a file on Investment Bank A's computer network relating to the potential acquisition of Pharmacyclics.

c.   On or about March 4, 2015, FEINGOLD, Shell Company-1, Shell Company-2, and other entities owned and controlled by FEINGOLD and MALNIK each bought over a thousand shares of Pharmacyclics through online brokerage accounts.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud and Securities Fraud)

The Grand Jury further charges:

27.  The allegations contained in paragraphs 1 through 22 and 26 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

28.  From at least in or about 2013 through in or about 2017, in the Southern District of New York and elsewhere, TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) securities fraud, in violation of Title 18, United States Code, Section 1348.

29.  It was a part and an object of the conspiracy that TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose

15

of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

30. It was further a part and an object of the conspiracy that TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and known, willfully and knowingly would and did execute a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

(Title 18, United States Code, Section 1349.)

## COUNTS THREE THROUGH NINE
### (Securities Fraud)

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 22 and 26 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

16

32.  On or about the dates set forth below, in the Southern District of New York and elsewhere, TOMER FEINGOLD and DOV MALNIK, the defendants, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed in connection with the purchase and sale of securities manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, FEINGOLD and MALNIK, both directly and through various offshore corporate entities, placed timely, profitable securities trades based on material non-public information that had been obtained, in breach of fiduciary and other duties, and provided directly and indirectly to FEINGOLD and MALNIK in exchange for cash and other benefits, which trading occurred on or about the dates listed below:

| Count | Transaction Date | Company | Transactions |
|---|---|---|---|
| 3 | In or about November and December 2013 | Ariad | Purchases of at least approximately 219,364 common shares |
| 4 | In or about July and August 2014 | Intermune | Purchases of at least approximately 48,638 common shares |
| 5 | In or about November and December 2014 | Avanir | Purchases of at least approximately 255,519 common shares |
| 6 | In or about March 2015 | Hyperion | Purchases of at least approximately 131,827 common shares |
| 7 | In or about March 2015 | Pharmacyclics | Purchases of at least approximately 21,400 common shares |
| 8 | In or about March and April 2015 | Receptos | Purchases of at least approximately 37,486 common shares |
| 9 | In or about April and May 2015 | Omnicare | Purchases of at least approximately 72,775 common shares |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNTS TEN THROUGH TWELVE
### (Fraud in Connection with Tender Offers)

The Grand Jury further charges:

33.   The allegations contained in paragraphs 1 through 22

and 26 of this Indictment are hereby repeated, realleged, and

incorporated by reference, as if fully set forth herein.

18

34.  On or about the dates set forth below, in the Southern District of New York and elsewhere, TOMER FEINGOLD and DOV MALNIK, the defendants, willfully and knowingly engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, FEINGOLD and MALNIK, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought, and to be sought, by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold; and (b) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of such securities and securities convertible into and exchangeable for such securities and options and right to obtain and to dispose of such securities and options, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, to wit, FEINGOLD and MALNIK, both directly and through various

offshore corporate entities, placed timely, profitable

securities trades, based on material non-public information

concerning tender offers, on or about the dates listed below:

| Count | Transaction Date | Company | Transactions |
|---|---|---|---|
| 10 | In or about November and December 2014 | Avanir | Purchases of at least approximately 255,519 common shares |
| 11 | In or about March 2015 | Hyperion | Purchases of at least approximately 131,827 common shares |
| 12 | In or about March and April 2015 | Receptos | Purchases of at least approximately 37,486 common shares |

(Title 15, United States Code, Sections 78n(e) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.14e-3(a) &
240.14e-3(d); and Title 18, United States Code, Section 2.)

### COUNT THIRTEEN
### (Wire Fraud)

The Grand Jury further charges:

35.   The allegations contained in paragraphs 1 through 22

and 26 of this Indictment are hereby repeated, realleged, and

incorporated by reference, as if fully set forth herein.

36.   From at least in or about 2013 through in or about

2017, in the Southern District of New York and elsewhere, TOMER

FEINGOLD and DOV MALNIK, the defendants, willfully and

knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and

20

promises, transmitted and caused to be transmitted by means of
wire, radio, and television communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds
for the purpose of executing such scheme and artifice, to wit,
through the use of interstate wires, including interstate and
international telephone calls, securities trades, and financial
transactions, FEINGOLD and MALNIK participated in a scheme to
defraud at least Investment Bank A, Ariad, Intermune, Avanir,
Hyperion, Pharmacyclics, Receptos, and Omnicare of valuable
confidential information by deceptively converting that
information to their own use and the use of others in breach of
fiduciary and other duties for the purpose of committing insider
trading and executing securities transactions.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOURTEEN
### (Securities Fraud)

The Grand Jury further charges:

37.    The allegations contained in paragraphs 1 through 22
and 26 of this Indictment are hereby repeated, realleged, and
incorporated by reference, as if fully set forth herein.

38.    From at least in or about 2013 through in or about
2017, in the Southern District of New York and elsewhere, TOMER
FEINGOLD and DOV MALNIK, the defendants, willfully and knowingly
executed a scheme and artifice to (a) defraud persons in

21

connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, FEINGOLD and MALNIK, both directly and through various offshore corporate entities, placed timely, profitable securities trades based on material non-public information, in breach of fiduciary and other duties, and provided directly and indirectly to FEINGOLD and MALNIK in exchange for cash and other benefits, which trading involved the shares of Ariad, Intermune, Avanir, Hyperion, Pharmacyclics, Receptos, and Omnicare.

(Title 18, United States Code, Sections 1348 and 2.)

## COUNT FIFTEEN
### (Concealment Money Laundering Conspiracy)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 22 and 26 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

40.  From at least in or about 2013 through in or about 2017, in the Southern District of New York and elsewhere, TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

41.  It was a part and an object of the conspiracy that TOMER FEINGOLD and DOV MALNIK, the defendants, and others known and unknown, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity as defined in Title 18, United States Code, Section 1956(c)(7), to wit, fraud in the sale of securities and wire fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

42.  As a result of committing one or more of the offenses alleged in Counts One through Fourteen of this Indictment, TOMER

FEINGOLD and DOV MALNIK, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Fourteen of this Indictment, that the defendants personally obtained.

43. As a result of committing the offense alleged in Count Fifteen of this Indictment, TOMER FEINGOLD and DOV MALNIK, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

## Substitute Assets Provision

44. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

24

       d.     has been substantially diminished in value; or

       e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

          (Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

FOREPERSON

Audrey Strauss
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515



Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

TOMER FEINGOLD and
DOV MALNIK,

Defendants.

### SUPERSEDING INDICTMENT

S1 19 Cr. 714

(Title 15, United States Code, Sections
78j(b), 78ff, and 78n(e); Title 17, Code of
Federal Regulations, Section 240.10b-5,
240.14e-3(a), and 240.14e-3(d); and Title
18, United States Code, Sections 2, 371,
1343, 1348, 1349, and 1956(h).)

_____
Foreperson

AUDREY STRAUSS
Attorney for the
United States
Acting Under
 Authority
Conferred by
28 U.S.C. § 515

2/26/2020
NE

Superseding Indictment Filed
Arrest Warrant Incuded

Sarah L. Cave
USMJ